UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH SORANNO, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>HEARTLAND PAYMENT SYSTEMS, LLC, successor in interest to HEARTLAND PAYMENT SYSTEMS, INC.,<br><br>Defendant. | Civil Action No.: 3:18-cv-16218-FLW-LHG<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff, Joseph Soranno ("Soranno"), filed suit individually and on behalf of putative class members, against defendant, Heartland Payment Systems, LLC ("Heartland"), for breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), and unjust enrichment (Count Three). Soranno, a former Heartland employee, brought suit against Heartland over certain commissions Soranno alleges were not paid. In the instant matter, Heartland moves to dismiss the claim for the breach of the implied covenant of good faith and fair dealing. Because Soranno does not sufficiently allege that claim, Heartland's motion to dismiss Count Two is **GRANTED**.

BACKGROUND

The following facts are taken from the Complaint and taken as true for the purposes of this motion. Heartland is in the business of providing processing services to merchants for payment card transactions. Complaint. ("Compl."), at ¶ 1. Heartland hired Soranno in January 2007 as a Relationship Manager, a commission-only sales position. *Id.* at ¶ 2, 32. Soranno sold

1

Heartland's processing services for American Express ("Amex") card payment transactions to merchants, and for doing so, earned recurring monthly commissions. *Id.* at ¶ 4. All commission-based positions at Heartland are eligible to attain "Vested" status, which permits employees to continue earning commissions even after their employment with Heartland ends. *Id.* at ¶ 34.

In February or March of 2008, Soranno allegedly achieved Vested status, and he executed Heartland's Vested Relationship Manager Agreement. *Id.* at ¶ 36. According to Soranno, in April 2008, he took a new position as a Territory Manager, which required him to execute Heartland's Territory Manager Agreement. *Id.* at ¶ 38. Both executed agreements (hereinafter "VA") are interchangeable. *Id.* at ¶ 45. Soranno alleges that the VA entitled him to receive commissions for his merchants' transactions processed through Heartland after his employment at Heartland ended. *Id.* at ¶¶ 6, 34. However, the VA also provided that Sorannos's commissions would be paid consistent with Heartland's Sales Policy Manual and that the manual could be amended periodically. *Id.* at ¶ 7.

Soranno voluntarily resigned from his position with Heartland in December 2012, and he continued to receive his commissions under the VA in accordance with the Sales Policy Manual. *Id.* at ¶¶ 49, 50. In 2014, Soranno avers that Amex changed its pricing for card transactions and Heartland converted merchants to the new pricing. *Id.* at ¶ 51. In 2015, Heartland allegedly revised its Sale Policy Manual to reflect a new commission structure for Amex processing services under the new pricing. *Id.* at ¶¶ 60–61. As a result, Soranno acknowledges that he experienced an increase in the value of his commissions for December 2014 and January 2015, which Soranno maintained was an indication that Heartland was receiving more revenue from merchants under the new pricing. *Id.* at ¶ 63.

During the price conversion, Soranno was subject to a restrictive covenant in the VA prohibiting Soranno from soliciting any of Heartland's merchants. *Id.* at ¶ 52. Then, in February 2015, Soranno alleges that Heartland ceased commission payments to him and class members, without warning, notice, or explanation, in violation of the VA. *Id.* at ¶¶ 65, 96. However, Soranno alleges that Heartland continued to pay commissions to its then-active sales employees who were subject to the same sales policies. *Id.* at ¶¶ 67, 68.

Soranno asserts that, in bad faith and with improper motive, Heartland failed to give warning or notice to Soranno that Heartland would discontinue commissions. *Id.* at ¶ 74. Heartland, according to the Complaint, did not communicate the Amex price change and amendments made to the sales policies, and concealed the reasons for terminating the commissions.[1] *Id.* at ¶¶ 76, 133.

Moreover, Soranno claims that Heartland demonstrated improper motive through its disparate treatment of former and active employees because it continued to pay commissions on identically price-converted merchant accounts to its active sales employees, who were governed by the same Sales Policy Manual. *Id.* at ¶¶ 78, 137. Soranno also alleges that Heartland stopped paying the commissions because it was facing competition from other payment processing companies, and that Heartland's founder and former CEO, Robert O. Carr, labeled the new pricing program as a new product altogether in order to render subsequent transactions ineligible for commission payments post-employment. *Id.* at ¶¶ 79, 86. In addition, Soranno claims that

---

[1] Soranno alleges that Heartland ceased paying commissions after merchants were converted to the new Amex pricing, which took advantage of the restrictive covenants in the VA. *Id.* at ¶ 53. However, the Court is unable to discern the connection between the restrictive covenants and the commission payments because Soranno does not allege in the Complaint that he would have been relieved of the obligation of the restrictive covenant when Heartland discontinued Soranno's commission payments.

3

Heartland's executive managers, who were also shareholders, were attempting to sell or merge Heartland, and therefore, had a financial incentive to reduce commissions to make Heartland a better candidate for a merger or acquisition. *Id.* at ¶¶ 81–82.

On October 15, 2018, Soranno brought this putative class action against Heartland for breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), and unjust enrichment (Count Three). Heartland moves to dismiss Count Two (breach of the duty of good faith and fair dealing) under Rule 12(b)(6).

## DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

## II. Breach of Duty of Good Faith and Fair Dealing

The Complaint alleges that Heartland strategically and purposefully ceased paying commissions in order to become more financially attractive as a potential subject of a merger or acquisition, and that in doing so, Heartland concealed its reasons, thereby improperly depriving Soranno the benefits of the VA. Heartland requests dismissal of Soranno's claim on the basis that it is premised on the same conduct underlying Soranno's breach of contract claim. Heartland also

argues that Soranno fails to specifically allege the improper motive on the part of Heartland, other than the fact that the alleged breach benefited Heartland. Because Soranno does not sufficiently allege that Heartland breached the VA with ill-motive to injure Soranno, Soranno has failed to state a claim for a breach of the implied covenant of good faith and fair dealing.

Each contract in New Jersey contains the implied covenant of good faith and fair dealing. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001); *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997). The implied covenant of good faith and fair dealing is "independent of the duty to perform the express terms of the contract, and may be breached without a violation of the contract terms." *Intervet*, 2017 U.S. Dist. LEXIS 64266, at *16. A breach of the implied covenant arises when an opposing party acts consistently with the terms of the contract, but does so in a manner that injures the other party's right to receive the "fruits of the contract." *Id.* at *17. A plaintiff may recover under the covenant if the defendant acts with "ill motives and without any legitimate purpose," destroying the plaintiff's reasonable expectations in entering the contract. *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 226 (2005). However, "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive." *Wilson*, 168 N.J. 236, at 251. Thus, improper motive is a critical element of an alleged breach of the covenant. *Intervet*, 2017 U.S. Dist. LEXIS 64266, at *19.

Furthermore, the alleged conduct underlying a breach of the implied covenant of good faith and fair dealing must go beyond the conduct underlying a claim of breach of contract. *Id.* at *17. That is, the plaintiff cannot only allege that the defendant failed to perform its duties under the contract; the plaintiff must show that the defendant acted in such a way so as to deny the plaintiff's right to the benefits of the contract distinct from the contractual breach. *Id.* at *21; *see*

*Freedom Waste Solutions, Inc. v. Family Dollar*, No. 15-4756, 2015 U.S. Dist. LEXIS 139630, at * 14 (D. N.J. Oct. 14, 2015) (citing *Wade v. Kessler Institute*, 172 N.J. 327, 340 (2002)). Moreover, the party asserting the breach of the implied covenant must provide evidence that the opposing party purposefully "harbored" bad intentions or motives in doing so. *Intervet*, 2017 U.S. Dist. LEXIS 64266, at *19. However, a party does not breach the implied covenant "merely because its decisions disadvantaged another party" and there is no obligation that parties act altruistically toward one another. *Irwin Katz & Associates, Inc. v. Concepts in Health, Inc.*, No. 13-1217, 2017 U.S. Dist. LEXIS 20560, at *23 (D. N.J. Feb. 14, 2017).

    Here, Soranno only alleges that Heartland failed to perform its duties under the contract and his factual allegations, even if true, present only economic motive on the part of Heartland. Soranno alleges that Heartland impaired Soranno's contractual right to commissions because Heartland and its executive managers—who were also shareholders—sought to position Heartland as a more attractive target for a potential merger or acquisition. Soranno alleges that Heartland stopped paying commissions without notice after Amex's pricing structure changed. Soranno's allegations in this regard are insufficient, however, because they merely show that Heartland made financially-motived decisions, which benefited Heartland but to Soranno's detriment. Indeed, a party does not breach the implied covenant simply because its decision to breach disadvantaged another contractual party. In other words, Heartland's decisions to benefit itself cannot be a basis for an improper motive under the implied covenant of bad faith and fair dealing. *Elliott & Frantz, Inc. v. Ingersoll-Rand Co*., 457 F.3d 312, 329 (3rd Cir. 2006); *Fabbro v. Drx Urgent Care, LLC*, 616 Fed. Appx. 485, 488 (3rd Cir. 2015); *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 518–519 (D.N.J. 2009); *see also Angel Jet Servs., LLC v. Borough of Woodland Park*, No. 10-6459, 2012 U.S. Dist. LEXIS 153973, at *12–13 (D. N.J. Oct. 26,

2012); *see also Boardwalk Regency Corp. v. Unite Here Local 54*, No. 08-0016, 2009 U.S. Dist. LEXIS 55995, at * 24 (D. N.J. Mar. 3, 2009) (holding that "a party that exercises its discretion in order to further its own business interests without seeking intentionally to injure its contractual partner does not" breach the covenant of good faith).

As an example of bad faith, in *Intervet*, this Court found that the defendant's counterclaim allegations adequately demonstrated that the plaintiff "purposely and knowingly made strategic, bad faith decisions" to damage the defendant's business, because they amounted to more than a claim for breach of contract. In that case, the defendant asserted that the plaintiff purposefully failed to properly conduct clinical studies as part of an agreement regarding technology to develop a cure for disease in dairy cows. Importantly, the plaintiff allegedly did so in order to interfere with the defendant's business relationships. Unlike the defendant in *Intervet*, Soranno does not adequately allege that Heartland, in bad faith and with purpose to distinctly harm Soranno, injured Soranno's right to receive the benefit of the bargain beyond the termination of commissions.

Furthermore, Soranno additionally alleges that Heartland continued to pay the same commissions to active employees and that Heartland's former CEO purposefully labeled Vested former employee merchant accounts as new accounts after the price change, rendering the accounts ineligible for commissions. These allegations, however, only show that Heartland breached the VA, and deprived Soranno the anticipated benefit of the VA, which is also insufficient to establish a breach the covenant of good faith and fair dealing. That is, Soranno does not allege that Heartland harbored ill-motive toward Soranno in terminating his commissions, separate from Heartland's alleged financial incentives to breach the VA. Moreover, Soranno's allegation that Heartland concealed its reasons for ending commissions

similarly amounts only to a breach of contract; Soranno does not allege that Heartland aimed to harm Soranno beyond the fruits of the contract. *See*, *e.g.*, *Freedom Waste*, 2015 U.S. Dist. LEXIS 139630, at * 15 (holding that the plaintiff did not sufficiently assert a breach of good faith because plaintiff did not allege any unlawful conduct by the defendant distinct from the alleged contract breach). Therefore, Heartland may have allegedly deprived Soranno of his commissions, but there are no allegations that it took any actions, or had any intentions, to harm Soranno beyond his contractual right to commissions. Thus, Soranno's allegations have failed to establish bad faith, a requirement to properly plead a breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

For the foregoing reasons, Heartland's motion to dismiss is **GRANTED**, and Plaintiff's Count II for breach of the implied covenant of good faith and fair dealing is **DISMISSED**.

Dated: July 26, 2019 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
Chief United States District Judge